This case is Herring v. Ameri-System Protection Board. Mr. Herrick. Hi Judge, it's not Steve Herrick, it's Matthew Tully. We submitted a motion to change counsel. If you may please the court, I'm Matthew Tully, I'm the petitioner. The basic facts of this case are undisputed. A young lawyer missed the deadline to file a disability appeal by mere days. It was a mistake that at its heart pertains to the business of law and not the practice of law. That is, making sure she had a signed retainer agreement, a signed statement of client rights and money to perform the work before she started the appeal. The disabled veteran, petitioner, did absolutely nothing wrong in this case. The law firm's misleading conduct hindered the petitioner's efforts to achieve a benefit that she's entitled to statutorily under law. The young lawyer's mistake was not intentional, it was not malicious, and dare I say, not unusual. Counsel, when you hire an attorney to appear before you, such as you are before your client, you're standing there in the shoes of your client, aren't you? Yes, Judge. And the words you're saying are the words of your client. You're representing your client. So, in a way, you are your client, in terms of the representation. Absolutely, Judge. A professional lawyer, that is 100% true. So, in this situation, the law firm missed the filing date. Yes, Judge, that's undisputed, that the filing date was missed. Why isn't that imputed to the client as well? If that's the conduct or the result of the work or the operation of the law firm, why isn't that the conduct of the client as well? Because the client did everything reasonable in light of her medical and mental conditions to make sure the appeal was filed correctly. This was a perfect storm of law office failure that resulted in this problem. Well, leaving aside mental and physical disabilities, what else would she have done? She checked? Absolutely, Judge. Upon receiving, after a two-year wait, she finally got the decision. She contacted our law firm. She made a consult. She paid a consult fee. Telephonically, she met with an attorney. Next day, the law firm sent a retainer agreement. She then made payment via power of attorney, because she has issues with handling her own finances, to our law firm, to a different office in our law firm. She confirmed with our law firm that if I send you all these things and I made this payment, will you file it in a timely fashion? And our law firm said, yes, we will. She then sent in all the documents to include the MSPB appeal form signed, and yet the law office dropped the ball. So the minute the retainer agreement was signed, then the representation with the board was through the attorney, correct? Well, Judge, that's a little bit tricky, because she did sign the retainer agreement. The retainer agreement was sent to our Washington, D.C. office. The consulting attorney, a very junior consulting attorney... Well, I understand the dilemma of having multiple offices. I mean, when I practiced law, that was a case. We had multiple offices. But it seems to me rather strange, the argument that Law Office A did not know what Law Office B was supposed to do, and therefore the law firm as a whole should not be held to its professional obligation. The reason why the law firm wasn't able to handle this is because the payment was made to another office in the name of another person. But it's still your office. It's still the same law firm. Are you arguing that your firm should not be held to its professional obligation? The exact opposite, Judge. The MSPB held that the client was responsible for the failure to timely apply. We're here arguing mea culpa. It was the law firm that was responsible. It was not the client. I hate to use bad words, but you're arguing that your firm committed malpractice. Yes, Judge. That's exactly correct. So we hate to say it, but we feel a duty to be forthcoming with this court. So the client's remedy doesn't lie somewhere else other than this court? Well, not the way... You've established the cause of the late filing. Unfortunately, Judge, the way the current wording is, is it doesn't, because the MSPB held that she was responsible. So her cause of action in a malpractice complaint would be very difficult, if not impossible. That's the way they frame all their decisions. Most decisions we get on review refer to the client, to the individual, by name, not by the lawyer. In this specific case, the facts from the decision of the MSPB blames the disabled petitioner. Based off of those facts, the odds of getting a remedy through malpractice is not very high. Can I explore the following with you? It's a legal question, but it may be affected by precisely when the lawyer-client relationship came into being. Here's what I'm thinking. I understand that any adjudicatory system needs a very strong you're-bound-by-your-lawyer policy. The tribunals can't constantly be looking through the lawyer and wondering whether the lawyer is speaking for the client. I wonder if that policy is applicable here to the extent that no lawyer-client relationship arose until August 23rd when you realized that the conditions had been met so that it would not be reasonable for the agency to say our very strong you're-bound-by-your-lawyer policy is driving this exercise of discretion because until August 23rd you weren't actually her lawyer. That's a scenario. Can you comment on that? Judge, our position is that by assurances from our office, on the 7th of August, she thought she had an attorney-client relationship. On the 8th of August, she met all of the predicates. But then the analysis would shift to, okay, we can't say that you actually had a lawyer. Rather, we're now looking just at whether you acted reasonably but without this very strong thumb on the scales that say when you signed up a lawyer and the lawyer-client relationship has been consummated, the lawyer is you, and anything the lawyer does short of something more than happened here is attributable to you. What I'm wondering is if that is not quite right here because the misstep, the missing of the August 13th deadline occurred at a time when she did not in fact have a lawyer. She was trying to make that lawyer-client relationship come to fruition, but it hadn't yet. This, in other words, is a possibly hopeful way of looking at it from your point of view. Judge, I'm not looking at it as helpful from my point of view. Tell me why. My firm is mea culpa. I don't mean you personally. I mean Ms. Herring. Now you really are her. By law and the rules of professional responsibility, an attorney-client relationship was immediately formed when she delivered the check and the signed retainer letter, correct? That is the position, Judge, that we're taking here, and we believe that this case falls underneath an exception, which is the Dunbar v. Navy case, where when the attorney engages in misconduct or deception and doesn't act in accordance with the client. The problem with those cases is that whether unintentional or intentional, there was in those cases involved an affirmative representation to the client, and we don't have that here. We don't have something that said, I am taking care of this. Judge, I believe you do. I will be taking care of this. Is that not correct? You also have a phone call on August 7th in which the client spoke with a non-attorney in our office that said, you're going to be a client when you do these things. She did those things. I think an ordinary, prudent, unsophisticated legal customer had assumed that on the 8th of August she was represented by an attorney, and there doesn't appear to be anything in the record to establish that she at any time after August 8th thought that she was not represented by an attorney. That's why I think the Dunbar case falls in. Since the reply brief was filed, the MSPB came out with a new decision on the 5th of August with nearly identical fact patterns to this. Arguably worse fact patterns in that the attorney in that case had a delay of approximately 30 calendar days for the filing of a disability retirement. In that case, the MSPB allowed the matter to be heard on the merits. Do we have that before us? It was not because our reply brief came out in June, Judge. What's the cite on that? It is an August 5th 2014 case. The name is Carol Brinkner, B-R-I-N-K-N-E-I-S-S-N-E-R versus OPM. It's a MSPB docket number P-H-844-E-14-0077-I-1. You better do that again. Judge, would you like to copy? Sure. Thank you. Let me understand something that you said. The problem that you're having with the case is that the decision refers to the client and not the firm. That essentially is leaving the client out in the cold. Yes, Judge. Why can't we change that and perhaps make a finding where it names the client and ensures that, excuse me, the firm, and ensures that we restate your mea culpa in a decision we make? That could give potential relief to your client, correct? Yes, Judge. I would argue that I think your only two options here are remand or affirm. If you affirm, you can't blame the law firm. If you remand and cite the law firm, I think that is the appropriate action. And that is the action that we move this court to do, to remand, based off of the excusable neglect of the law firm. The court is free to say that it's excusable or not excusable, but that is our position. And we believe that that goes along with the recent MSPB case. We believe it goes along with Dunbar versus the Navy. Am I remembering right? The board did not say anything at all about the fairly well-established principle that retirement benefits cases get more lenient treatment because there's less, not that there's no interest to the government, but there's a lesser interest to the government because they may not be holding a place open or anything like that. Yes, Judge. It was buried in the footnote in the decision. And that's where we get the abuse of discretion and noncompliance with the law because the MSPB failed to properly articulate the analysis of the cases that clearly show where there are attorneys that have committed excusable neglect and they allowed those cases and how our case is distinguishable from all of those other lines of cases. And this court has repeatedly had concerns with MSPB when they don't properly... I'm sorry, you said buried in the footnote. Footnote 2, Judge, of the full board's decision. It basically dismissed all of the case law that we cited. You're not relying on that theory though, right? I rely on every theory, Judge. So I'm relying on a theory that there's an abuse of discretion here by the MSPB by failing to analyze the cases that we presented before them, the cases of this court, which found the Alonzo factors are somewhat controlling. We believe if you look at the Alonzo factors, they nearly all fall in favor of our client. The length of the delay here is minimal. It's ten days. The MSPB has found delays of two years as acceptable. That's the Carper case. The circumstances beyond the employee's control here is in the control of her attorney. I'm going to say my rebuttal, Judge. All right. Thank you. Attorney Reardon? Good morning, Your Honor. First of all, we don't believe that MSPB abuses discretion in finding that Ms. Herron did not show good cause for the delay in filing her appeal. How does it differ from Brink-Meisner? I just skimmed through it. Well, first of all, if you look at all of the cases that the board has found good cause, there are other issues involved. In one case, Brink-Meisner. I think it differs in the fact that in the board's, in Ms. Herron's case, Ms. Herron did not make any effort between the time that she satisfied all the requirements by the law firm and the time that her appeal was due. Both Ms. Herron and the lawyer knew that the appeal was due on the 13th. I think Counselor's statement that Ms. Herron could not have done anything. Ms. Herron, the case law says that the appellant always remained responsible. Wait a minute now. How is it unreasonable on the part of a non-lawyer to hire a lawyer, be told, you've done everything you need to hire me, and then rely on that? That's what she's doing, right? She's relying on that, but the case law says that an appellant remains responsible. I understand that, but how is it unreasonable? That's my question. I think it's unreasonable because in this particular case, both Ms. Herron and her counselor knew of the importance of August the 13th. So we believe she had a responsibility. Really? She had mental and physical disabilities too, no? Well, she was able to contact the lawyer. She was able to satisfy... Is that your answer? No, sir. She was able to satisfy all of the requirements put to her by the law firm. Therefore, there is no evidence that her mental or physical inabilities or abilities would have prevented her from contacting the law firm to attend a delay. It's not a matter of the board being prejudiced, because in a prejudice situation, the board says that when you look at prejudice to the agency, that the appellant has to show good cause. Prejudice to the agency only comes, is only considered after the appellant makes a good... So we agree there was no prejudice? Well, only to the extent that the board has a responsibility in carrying out its responsibility of deciding these cases in an expeditious manner. And the board has a responsibility not to open the floodgates to have all these cases come and appellants just can't file appeals when they want to. In the cases where the board has filed good cause, the appellant has filed an appeal in a timely manner and maybe this was a refiling of an appeal that was untimely. So the board looks at the totality of the circumstances in making its determination that in a particular case, an appellant has made a good cause determination. That is precisely why you have different cases. You can't say that a two-year wait is not appropriate and a five-year delay is appropriate, because when you look at the totality of the circumstances, you look at everything that's involved. You don't just look at the time for filing, you look at what was done and how it was done. Herring was 10 days. Brink-Meisner is 30 days. Well, if you look at the two cases, you look at what was done in each of these cases and how the board made its determination that one showed good cause and the other one didn't. If you look at Carker, for example, the board filed in Carker, they remanded because the board said that the A.J. did not address or did not outline what was required in order to show good cause. Every case that's cited, there is a difference in what the board determined in making its determination as to whether an appellant has shown good cause. This does not fall within the exception to Dunbar. In Dunbar, in many of these cases, appellants made various efforts to try to file the appeal. This law firm made no effort to thwart Ms. Herring's filing of her appeal and meeting her responsibility to file her own appeal. They misled her. Whether they misled her or not, I just don't think... You just said they made no effort to thwart. No, they did not. They did not. If they misled her into believing that they were taking care of it, is that not an effort to thwart even though it's inadvertent? No, it does not rise to that level because there is nowhere in the record where Mrs. Herring went to the law firm after she met all the requirements. There is no evidence between the time she met her requirements and the time that this appeal was due that Ms. Herring either called back to the law firm to ask them whether or not you have filed or do you intend to file my appeal on a timely manner. She did nothing between. The fact that it was only five days, I think, is not the relevant factor here. Do you think it's a relevant factor? It can be a relevant factor, but in this case, Ms. Herring knew that she had a short period of time. So we believe that it was more important for her to check to make sure that the law firm filed the appeal on time because the time was so short. So if it had been one day? She should have called every half hour? Sir, you have to look at the totality of the circumstances. I cannot say that a one day delay would be excusable because of the time alone. You have to look at everything that is involved. The board has held that even where an appellant is pro se and there is a one day delay, that an appellant did not make out a good cause So it's not the time alone. It's the totality of all the circumstances involved. So we believe that she did not meet her burden. Notwithstanding the fact that the law firm gave her several, their convoluted procedures is on the law firm. The cases and the standard is that an appellant or an individual is bound by the actions or omissions of his or her chosen counsel. Had Ms. Heron argued or shown evidence that she had called the law firm, let's say maybe four or five times and said, did you file it? Did you file it? Call again. Are you sure? And then call again. I want to make sure that you filed it. Do you think that makes a difference in this case? It may have. I can't say because I'm not the board, but it may have made a difference. It would have shown at least that she put forth some effort. It would have shown that she exercised some due diligence. Don't you think it's effort and due diligence to go out and hire a lawyer and pay them? Well, case law say even if you hire a lawyer, you remain responsible for the prosecution of your field. That's the case law. That has not been refuted by this court or anywhere if you look at except where the law firm makes an effort to thwart. The cases where the law firm secretary, for an example, the lawyer asks the secretary, did you file the appeal? The secretary says, yes, I did. Asks the secretary again, did you file the appeal? The secretary says, yes, I did. And then two or three days later, I forget the amount of time, the lawyer sees the appeal on the desk. The board says that that fell within the Dunbar exception. That is precisely why the board looks at these in the totality of the circumstances. I cannot sit and give a set of circumstances and say today that the board will excuse it without looking at it. That's why you get differences. You get cases where the board will excuse two years and it will not excuse one day. You get cases where the board will excuse a month or where the appellant did something. You get cases, one case where the appellant made several calls to the law firm and even hired someone to drive him to the law firm to see whether or not the appeal was filed. And you get cases where the appellant makes an effort to file the appeal on his or her own and the law firm says, don't bother, we will file. Those cases fall within the exception. This is not one of the cases that falls within the exception. It's unfortunate, but it does not fall within the exception. And the board has to have a cutoff somewhere because every time you look at a case and you analyze the totality, you analyze the circumstances involved, you look at what the appellant did, you look at what the law firm did, and the board comes up with a reasonable conclusion that in this case, the appellant didn't satisfy her burden to showing good cause. And incidentally, this court's review of the board's decision is whether or not the board abused its discretion. And we don't believe that the board abused its discretion. When you look at the totality of all the circumstances surrounding this particular appeal, we don't believe that the board abused its discretion. I just have this one point. The board made no reference to its own line of cases about greater leniency for retirement benefits cases. Why is the failure to consider a potentially important factor in a potentially close case based on its own precedent, not an abuse of discretion and a reason for a remand? We believe it's not because when the board looks at retirement cases, in all of its cases, retirement, discharges, demotion, all of its cases, the board analyzes the Alonzo factor. If you look at the cases where the board has made a determination that retirement cases may or may not be different, there are different fact circumstances. In one case where the administrative judge, for an example, looked at all of the factors, first of all, in the cases, most of the cases where the board found good cause in retirement cases are cases where the initial appeal was filed timely. We're talking about petitions for review. In one case in particular, the board looked at what the administrative judge did. The administrative judge looked at the circumstances and agreed with OPM that this person was not entitled to his or her retirement benefit because the OPM has said this person made no effort to seek medical help for the condition. MESAC is the case. The board looked at what the administrative judge looked at and made a determination that it will not deny this individual retirement benefits when the evidence showed that this individual wasn't entitled to retirement benefits. Here you got evidence on the record that contradicted what the administrative judge held. So each of the cases, when the board looked at these cases, each one on a case-by-case and a case-by-case basis, the board comes up with its own determination as to what happened in these cases and make a determination. So the fact that the board said that they will make some distinction in retirement cases did not mean, at least in our opinion, that the board has no intention of looking at the Alonzo factors in the first instance to make a determination as to whether or not the appellant has shown good cause for the filing of his or her appeal. In this case, in the Heron case, we have a difference. The initial appeal was not timely filed. So if the initial appeal was not timely filed, you have no factors in here for the board to review. You're only looking at the timeliness issue. And when you're looking at the timeliness issue, there is nothing in this record to show that satisfied all the requirements in a timely manner. So the five days that Judge Wallach asked early, we believe that the five days does not make a difference. Just one. How does this square with substantial notions of fair play and equal justice? I mean, people have a right to expect that from the government. We agree, Your Honor, that people do. But Congress has given to the board the responsibility to set procedures for adjudicating its cases. The board has to draw the line somewhere. Otherwise, the floodgates will be open. People will come anytime they choose to file appeal and would not expect any kind of And first of all, in the Heron case, OPM, we have to remember, OPM has already said on two occasions that she was not entitled to retirement benefits. So it's not that you've got a body of evidence out there showing that Ms. Heron is entitled to retirement benefits and the board, by finding that she did not meet her burden to show good cause, the board is denying. She's already gotten two Does that impact the decision by the board? No, it does not impact the decision by the board, but if you look at a situation between this case and MESHAC, for an example, where the board had evidence that the individual was entitled to retirement and the board said the A.J. got it wrong, here you do have two decisions from So we believe fair play and justice, yes, the board want to get it right, the board want to have fair play and the board want to have justice, but the board has to draw the line at some point because otherwise the whole congressional intent and the congressional mandate for the board to set procedures in order to adjudicate its cases would go out of the window. Every time somebody comes to file something, they will say, well, fair play, no justice. I didn't file. I filed ten years late, four years late, so no justice. The board has to draw the line. Thank you so much, Ron. Judge, just to follow along the case that I described to you, the Alexa search shows that that case was settled, that after it was remanded down, OPM realized that they were wrong. That case is now gone. So the fact that OPM found twice that they were correct, only to have the case remanded because of an attorney error, resulted in that client receiving a lifetime of annuity benefits. The other key factor on rebuttal I'd like to point out is our client was unsophisticated. She issued our law firm a power of attorney because of her anxiety and depression. By giving us a power of attorney, she clearly was trying to divest her of the minutia of having to call every 30 minutes. She trusted our law firm. Our law firm is one of the largest law firms in the country that handles federal sector cases. We deal with thousands of MSPB cases. We have won numerous cases before this circuit on MSPB cases. I challenge our law firm's record against any other law firm in the area. This was a fluke, a horrible fluke for reasons that are in the record and reasons that are not in the record. Okay. Thank you very much.